ROGERS, Respondent, v. ROGERS, Appellant.

No. 8866

Submitted February 17, 1949. Decided July 8, 1949.

Rehearing Denied October 6, 1949.

209 Pac. (2d) 998

Mr. Lyman H. Bennett, Jr., Virginia City, for appellant. Mr. Bennett argued orally.

Mr. Charles L. Zimmerman, Butte, for respondent. Mr. Zimmerman argued orally.

MR. JUSTICE FREEBOURN:

This is an action for divorce, appealed from the second judicial district of the state of Montana, in and for the county of Silver Bow, the Honorable T. E. Downey, district judge presiding.

Plaintiff husband had judgment and defendant wife appeals.

The complaint, after necessary allegations of marriage and residence, alleged there was no issue and ''plaintiff prior to said marriage and subsequent thereto acquired and owned as his separate property a bank account in the Metals Bank and Trust Company, of Butte, Montana, of the value of $2,040.00 and certain stocks and bonds of the value of approximately $2,200.00, and certain real estate, situated in Madison County, State of Montana.''

It alleged extreme cruelty, a course of conduct, in the words

of the statute, followed by allegations of specific acts constituting the same. Among such acts alleged were, "That during the latter part of August, 1946, the said defendant without any cause or reason therefor, left the home occupied by the parties, withdrew from the bank the aforesaid bank account and all thereof, and took with her the aforesaid bonds and stocks, all of which was against the will and without the consent of the plaintiff."

The prayer of the complaint asked that plaintiff be awarded an absolute divorce; "2. That it be ordered, adjudged and decreed that plaintiff is the owner of the personalty and realty herein described and each and every part thereof and that defendant be ordered to execute and deliver instruments to plaintiff resting the title thereof in said plaintiff; 3. For such other and further relief as to the court may seem meet and equitable in the premises."

Defendant filed her answer and cross-complaint admitting the allegations of the complaint as to marriage, residence and no issue. It denied all else in the complaint.

In a first affirmative defense the answer alleged the issues as to the realty mentioned in the complaint were being litigated in an action between the same parties in the district court of the fifth judicial district of the state of Montana, in the county of Madison.

In a second alleged affirmative defense, cross-complaint and counterclaim, the answer set up a cause of action for divorce on the ground of extreme cruelty. A decree of absolute divorce and permanent alimony in the sum of $100 per month were asked.

By reply plaintiff admitted the pendency of the action, as to the realty, in Madison county; the allegations of marriage and no issue. It denied everything else. The cause was tried in the lower court on November 24, 1947.

After findings of fact and conclusions of law made, the court in its decree: (1) awarded plaintiff an absolute divorce; (2) awarded plaintiff judgment against defendant in the amount of $2,040.00; (3) quieted title to the stock in plaintiff; and (4)

ordered defendent to transfer and convey such stock to plaintiff.

The evidence is scant, but we draw from it that James Rogers, plaintiff, had for over 30 years, worked as a miner in the Butte mines; that he married Myrtle Rogers, defendant, then a waitress and sixteen years of age, in 1932; that at her request, and at his expense, he sent her to the Butte Business College, Montana University, Drake University, and the University of California; while she was away he regularly sent her money and gave her expensive rings; when she left him she took all available cash, except a few dollars, all evidence of title to his property, certain stocks, a deed to the ranch and bank book.

He testified he had put all his property in her name, never intending to give it to her. With the money secured from disposing of his real property near the Five Mile, at Butte, he purchased the ranch at Silver Star, in Madison County, Montana. He placed the title in his wife's name. He understood she was to return the property to him if anything ever happened or if he should request it, to which she agreed. Defendant denied such understanding. She said she was sixteen years of age when married and worked at that time as a waitress; that, after marriage she attended the Butte Business College, Montana State University for three years, Drake University four years and the University of California for six weeks; that plaintiff assisted her financially with her education. Her testimony, in part, was: "I was entirely dependent upon his earnings until the end of 1941. Afterward I worked on several newspapers and in the Belgian embassy. My husband bought me several fur coats and diamond rings. I now speak several languages and live in Chicago, Illinois, where I work as a secretary at a substantial salary. The ranch at Silver Star had formerly belonged to my stepmother and the ranch was purchased with the proceeds from the condemnation proceedings. My husband took charge of the condemnation proceedings. At that time I was attending the University of Montana. The land that was condemned had been owned by the Rogers family for years. I left my husband, with-

out his knowledge or consent, about October, 1946. All of his property had been placed in my name. We had a few hundred dollars at the ranch and I took all but $30.00 or $40.00. I also have spent almost all of the $2,040.00, that was in the Metals Bank, for my own purposes. I withdrew the same without Mr. Rogers knowing about it. I left the stocks in a rooming house in Butte. They belonged to my husband. I intended to give my husband one-half of the property including the money in the bank and I wrote letters to my step-mother to such effect, but I have not done so. The stocks are in my name, but I will endorse them and turn them over to him if produced, but I do not have them in my possession. Most of the money in the bank was earned and inherited by Mr. Rogers.''

In answer to repeated questions defendant refused to say if she had put $1.00 or more in the bank account.

Appellant has set out six specifications of error in her brief. ██ We have considered all of these and find Nos. 1, 2 and 3, based upon the findings of fact and conclusions of law without merit because such findings of fact and conclusions of law are not incorporated in the decree. Defendant's rights are in no way prejudiced since the decree and judgment is silent as to such findings of fact and conclusions of law. There is no adjudication to be questioned upon appeal when not contained in the decree. Lewis v. Lewis, 109 Mont. 42, 94 Pac. (2d) 211.

Findings of fact and conclusions of law do not constitute any ██ part of the judgment but merely a foundation therefor. Galiger v. McNulty, 80 Mont. 339, 260 Pac. 401; State ex rel. Monteath v. District Court, 97 Mont. 530, 37 Pac. (2d) 567; Lewis v. Lewis, supra.

Neither party questions that part of the decree granting plaintiff an absolute divorce.

In the three remaining specifications of error appellant contends the court erred in (a) quieting title in plaintiff to the stocks; (b) ordering defendant to transfer and convey to plaintiff the stocks; and (c) adjudging that plaintiff recover from defendant the sum of $2,040.

In disposing of the first two contentions we call attention to section 9191, R. C. M. 1935, which provides: "The court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

No substantial right of appellant was affected by the court ■ quieting title to the stocks in plaintiff and in ordering defendant to transfer and convey them to plaintiff.

According to the transcript defendant testified: "I left the ■ stocks in a rooming house in Butte. They belonged to my husband. The stocks are in my name, but I will endorse them and turn them over to him if produced, but I do not have them in my possession."

The defendant made no claim to the stocks and stated they belonged to plaintiff. Hence there could be no harm in quieting title in plaintiff and ordering such stock assigned to him. If the defendant did leave the stock, valued at $2,200, in some unnamed rooming house in Butte, she could still have assigned it to plaintiff, according to counsel, by making an independent assignment. She has signified her willingness to do almost this exact thing. She could suffer no harm by the court directing her to do that which she could do and which she said she was willing to do.

This leads then to the question, did the court commit prejudicial error in adjudging that plaintiff recover from defendant the amount of $2,040?

This is the amount of the bank account at the Metals Bank which the testimony showed stood in defendant's name but was money derived from his earnings and sale of land, under condemnation proceedings, long in the Rogers family, and inherited by plaintiff from his relatives. The court could have found from the evidence before it that no part of such bank account had been deposited by defendant, as her own separate property; that she had no interest in it; that at defendant's suggestion the

money was deposited in her name with the understanding that she would have it in the event of plaintiff's death; that she would have no present interest in it and would upon request return all of it to plaintiff; that she would return it to plaintiff if anything ever happened; that she took it without plaintiff's knowledge and consent and instead of giving him one-half of it, as she testified she intended to, she had in fact, spent most of it for her own purposes. Defendant also admitted that "most of the money in the bank was earned or inherited by plaintiff."

The complaint alleged the $2,040 was plaintiff's separate property; that, trusting defendant, it was placed in her name although she had no interest in it; and that she took the money without plaintiff's consent.

The prayer of the complaint asked: "3. For such other and further relief as to the court may seem meet and equitable in the premises."

No demurrer or motion was filed to the complaint. The answer made issue with a denial. Evidence, on the money issue, was given by both parties, freely, voluntarily and without objection.

The complaint states a cause of action for divorce. Under the demand for general relief the court could, under the circumstances here, grant any relief to which plaintiff was entitled, upon the allegations of the complaint and the proof introduced.

Section 9164, R. C. M. 1935, provides: "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties."

"* * * whatever is necessarily implied in, or is reasonably to be inferred from, an allegation is to be taken as directly averred." Gauss v. Trump, 48 Mont. 92, 135 Pac. 910, 912; Harmon v. Fox, 31 Mont. 324, 78 Pac. 517.

Section 9316, R. C. M. 1935, states: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but *in any other case* the court may grant him any relief consistent with the case made by the complaint and embraced within the issue." (Emphasis supplied.)

Further: "The prayer of an equity pleading does not conclude the pleader, and he may have such relief as he shows himself entitled to." Kleinschmidt v. Steele, 15 Mont. 181, 38 Pac. 827, 828; State ex rel. Russell v. Tooker, 18 Mont. 540, 46 Pac. 530, 34 L. R. A. 315; Davis v. Davis, 9 Mont. 267, 23 Pac. 715.

In Gauss v. Trump, supra, this court said: "Where the inferential allegations of a pleading are not attacked by special demurrer or motion, as may be appropriate, we know of no modern authority which denies the right of the pleader to make proof under them; and that such an allegation as the one before us will support proof was intimated in Jones v. Rich, 20 Mont. 289, 50 Pac. 936, and expressly decided in Wise v. Hogan, 77 Cal. 184, 19 Pac. 278. To all this we add the statutory injunction that no judgment shall be reversed by reason of any error or defect in the pleadings which does not affect the substantial rights of the parties. Rev. Codes, sec. 6593."

In Merk et al. v. Bowery Min. Co., 31 Mont. 298, 78 Pac. 519, 523, this court said: "Is the complaint to restrain prosecution of a forcible entry and detainer suit? We need not consider whether the complaint states facts sufficient to constitute such cause of action if it does state facts sufficient to constitute a cause of action for any other relief, as the fifth subdivision of the prayer of the complaint is as follows: 'That the plaintiffs may have such other and further relief as shall be meet and agreeable to equity and good conscience.' This is sufficient to warrant the court in granting any relief to which the plaintiffs are entitled upon the allegations of the complaint and the proof introduced * * *."

In Davis v. Freisheimer, 68 Mont. 322, 219 Pac. 236, 239, this court said: "This is a good illustration of the common sense rule that, unless there is a want of substance in a complaint upon the particular issue involved and a failure of proof in consequence, a case should not be reversed at the instance of a defendant who has not been deprived of a substantial right, but who, on the contrary, has been enabled to and has defended the action upon the merits of the cause irrespective of the technical condition of

the pleadings. The idea that a disappointed litigant who has had a fair and impartial trial upon the merits of the cause may obtain a new trial because of the absence of a nonessential allegation, or for some mere defect in a pleading, is archaic, and has been relegated to the past in this jurisdiction.'' See also, Donovan v. McDevitt et al., 36 Mont. 61, 92 Pac. 49.

Under the circumstances, pleadings, issues, evidence and law, plaintiff was entitled to a judgment for the money taken.

No prejudicial error being shown, the judgment is affirmed.

Mr. Justice Angstman concurs.

MR. JUSTICE METCALF:

I concur with the opinion of Mr. Justice Freebourn and his disposition of the issues in the case except for his determination of the ownership of the bank account deposited in the Metals Bank of Butte in the defendant's name and I agree with the result there reached but for the reasons set forth below.

The facts are amply covered in the majority opinion and in Mr. Chief Justice Adair's dissent. An examination of those facts shows a direct conflict as to the intention of the plaintiff in making the deposit. The plaintiff testified that he placed all the property in his wife's name with the understanding that she would have it in the event of his death; that she would have no present interest in it and would upon request return it to him. The defendant testified that there was no understanding ''between my husband and me that I was to transfer any of the property to him.''

While the record is not as clear as might be desired, it is a reasonable inference that the money received from the sale of the Five Mile property was deposited in defendant's account and then drawn out by her to pay the purchase price of the ranch at Silver Star. The $2,040 which is the subject of the court's findings is other money deposited by the plaintiff to the defendant's account from his earnings or that he had inherited.

Such a transaction between husband and wife is presumed to be a gift. Bingham v. National Bank of Montana, 105 Mont. 159,

72 Pac. (2d) 90, 113 A. L. R. 315; Bast v. Bast, 68 Mont. 69, 217 Pac. 345. But the presumption is rebuttable. Kranjcec v. Belinak, 114 Mont. 26, 132 Pac. (2d) 150; 2 Bogert, Trusts & Trustees, sec. 459, page 1394.

If there is a promise to reconvey or a contemporaneous agreement that the wife is to hold the property for the beneficial use of the husband it is not a gift but a trust. Because of the confidential relationship between husband and wife the law recognizes such a trust. 54 Am. Jur., "Trusts," sec. 233, p. 178; Opp v. Boggs, 121 Mont. 131, 193 Pac. (2d) 379; Thompson v. Steinkamp, 120 Mont. 475, 187 Pac. (2d) 1018. Such a trust is created by operation of law and may be proved by parol testimony. First State Bank v. Mussigbrod, 83 Mont. 68, 91, 271 Pac. 695; Stauffacher v. Great Falls Public Service Co., 99 Mont. 324, 43 Pac. (2d) 647.

To establish a resulting or constructive trust a stricter standard of proof is required than in an ordinary civil case. "The proof must be clear, convincing, satisfactory, and 'practically free from doubt'." Meagher v. Harrington, 78 Mont. 457, 475, 254 Pac. 432, 438.

In McQuay v. McQuay, 81 Mont. 311, 263 Pac. 683, 686, the action was instituted by a father to have his son declared trustee of certain property purchased by the father and title placed in the name of the son. The court there said: "It is also true that evidence to establish a trust must be clear, convincing and satisfactory and practically free from doubt. When is the evidence of that character? The answer must be that if it has satisfied the conscience of the chancellor before whom the trial was had, and this court cannot say that the evidence clearly preponderates against the finding the requirement must be held to be satisfied. We must follow the oft-repeated rule that this court will not overturn the findings of the trial court unless there is a decided preponderance of the evidence against them; and when the evidence, fully considered, furnishes reasonable grounds for different conclusions, the findings will not be disturbed. (Citing cases.) It must be remembered that a preponderance of the evi-

dence may be established by the testimony of a single witness against a greater number of witnesses who testified to the contrary. (Citing cases.)''

In Stauffacher v. Great Falls Public Service Co., supra, it was argued that the evidence to establish the trust was only that of the plaintiff and was uncorroborated and therefore did not meet the strict standard required. The court cited the above quotation from McQuay v. McQuay, supra, and said [99 Mont. 324, 43 Pac. (2d) 651] : ''The trial court heard the case and found in favor of the plaintiff, and we are unable to say that the evidence preponderates against the decision. It satisfied the conscience of the trial judge, and there was sufficient evidence, if believed, as it was, to support the findings and judgment declaring a resulting trust in the lands in favor of the plaintiff.'' See Walker v. Walker, 254 Pa. 220, 98 A. 890; Miller v. Miller, 272 Ill. 468, 112 N. E. 331.

The following language from Harris v. Gurley, 80 F. (2d) 744, 748, C. C. A. (5th) 1936, is equally applicable to the instant case: ''The case presented a square issue of credibility, and we will not overrule those who saw and heard the witnesses testify. It is true that a parol trust must be proven by clear and convincing evidence. (Citing authority.) But that does not mean that the evidence must be without contradiction. If the court is convinced by clear evidence that the trust exists merely disputing the evidence will not defeat the trust.''

The rule that this court will consider the fact that the trial judge heard the witnesses testify, observed their manner and demeanor and was in a better position to resolve conflicts than we are is especially important in this case because of the scanty record which contains only remembered summaries of the testimony and is not in the witnesses' own words. Gilmore v. Ostronich, 48 Mont. 305, 137 Pac. 378; Koopman et al. v. Mansolf, 51 Mont. 48, 149 Pac. 491.

There is substantial legal evidence in the record to sustain the finding of the trial court that the plaintiff owned the $2,040 in the Metals Bank. Since the defendant's title was only that of

a trustee and the plaintiff was the beneficial owner, equity will trace the property into its product. In case it is impossible to trace it the beneficiary is entitled to a money judgment against the original wrongdoer. See dissenting opinion in Brownback v. Nelson, 122 Mont. 525, 206 Pac. (2d) 1017, for a collection of authorities on this point.

However, it is contended that the complaint does not state a cause of action for the imposition of a trust. The allegation ''that plaintiff having trust and confidence in said defendant allowed and permitted the record title to said personalty and realty to be in the name of the defendant although said defendant had and has no interest in and to said property or any part thereof'' is sufficient.

Where a confidential relationship is relied upon, the existence of the relationship is sufficient to establish the constructive trust. 5 Bancroft, Code Pleading, sec. 2398, p. 4390. The complaint identifies the property claimed, alleges that it is the property of the plaintiff, alleges that the property was put in the name of the defendant because of the confidential relationship and the confidence was violated by the defendant's withdrawing the funds against the will and without the consent of the plaintiff. That is enough to state a cause of action. No attack was made by special demurrer, motion, etc., and any grounds for such attack were waived.

The findings of the trial judge that the plaintiff is entitled to a judgment for $2,040, is sustained by substantial evidence, and is founded upon issues framed by the complaint.

MR. CHIEF JUSTICE ADAIR (dissenting):

On July 1, 1947, the husband James Rogers commenced this action against his wife Myrtle A. Rogers in the district court of the second judicial district for the state of Montana, in and for the county of Silver Bow, wherein the cause was tried.

The complaint comprises five paragraphs and a prayer. Paragraphs I, II and V set forth a cause of action for divorce grounded upon grievous mental suffering alleged to have been

persisted in and inflicted upon the husband for more than one year preceding the commencement of the action. The decree grants the husband a divorce on the grounds of mental cruelty and his evidence on such issue, if believed, is sufficient to sustain such portion of the decree. From that portion of the judgment which dissolves the marriage neither party has appealed, so it must be presumed that both are satisfied therewith.

In addition to pleading a cause of action for divorce the plaintiff husband has attempted to plead and commingle in his complaint various divergent causes against the wife without separately stating or numbering said causes and in violation of the rules and principles providing that to be so united they must belong to one only of the enumerated classes and that they be such as a district court is empowered to hear and determine under the statutes governing divorce actions. The divergent causes and classes of actions attempted to be pleaded herein are set forth in the third, fourth and fifth paragraphs of the complaint. Omitting therefrom the allegations setting forth the cause for divorce not pertinent on this appeal for the reasons stated, the complaint states:

"Complaint

"Comes now the Plaintiff and for cause of action alleges:

"I. That on the 7th day of December, 1932, in Garnerville, Nevada, the Plaintiff, James Rogers, and the defendant, Myrtle A. Rogers, intermarried * * *

"III. *That plaintiff* prior to said marriage and subsequent thereto *acquired and owned as his separate property a bank account in the Metals Bank and Trust Company of Butte, Montana, of the value of $2,040.00* and certain stocks and bonds of the value of approximately $2,200.00 and certain real estate, situated in Madison County, state of Montana of the reasonable value of $3,000.00 and more particularly described as: The East Half of the Northwest Quarter of the Northeast Quarter of the Southwest Quarter of Section 12, Township 2 South, Range 6 West M. P. M. less R/W to the State of Montana for Highway containing 6.57 acres.

"IV. *That plaintiff, having trust and confidence, in said defendant allowed and permitted the record title to said personalty* and realty *to be in the name of the defendant although said defendant had and has no interest in and to said property or any part thereof.*

"V. \* \* \* *That during the latter part of August, 1946, the said defendant,* without any cause or reason therefor; left the home occupied by the parties, *withdrew from the bank the aforesaid bank account and all thereof,* and took with her with aforesaid bonds and stocks, *all of which was against the will and without the consent of the plaintiff* \* \* \*.

"Wherefore, plaintiff prays judgment:

"1. That the bonds of matrimony heretofore and now existing between plaintiff and defendant be dissolved and that plaintiff be granted a decree of absolute divorce from said defendant.

"2. *That it be ordered, adjudged and decreed that plaintiff is the owner of the personalty* and realty *herein described and each and every part thereof and the defendant be ordered to execute and deliver instruments to plaintiff vesting the title thereof in said plaintiff.*

"3. For such other and further relief as to the Court may seem meet and equitable in the premises." (Emphasis supplied.)

Defendant's answer specifically denies and places in issue each of the allegations of the third, fourth and fifth paragraphs, supra, of the above complaint.

*Action to Recover Real Property.* In the third and fourth paragraphs of his complaint for divorce plaintiff assumed to unite and plead a cause to recover specific real property situate in Madison county, Montana, being of the class of actions designated in subdivision 2 of section 9130, R. C. M. 1935. There plaintiff seeks to have it "decreed that plaintiff is the owner of the \* \* \* realty \* \* \* described" and that defendant be "ordered to execute and deliver instruments to plaintiff vesting the title thereof in said plaintiff."

The district court of Silver Bow county had and has no jurisdiction whatever to hear or determine the pretended causes in-

volving the title to the described real property all situate wholly in Madison county. The Constitution of Montana requires that such actions "shall be commmenced in the county in which the real property * * * is situated." Section 11 of Article VIII, Constitution of Montana. These provisions of the Constitution "are mandatory and prohibitory." Section 29, Article III, Constitution of Montana. To like effect is section 9093, R. C. M. 1935.

Despite its utter lack of *jurisdiction* so to do, the district court of Silver Bow county, nevertheless, assumed to make findings of fact respecting the land situate in Madison county and found:

"6. That at the time the defendant left plaintiff as aforesaid, plaintiff owned absolutely and in his own right * * * certain real estate situate near Silver Star, Madison county, State of Montana; that the defendant claims an interest in and to said property and the whole thereof; but said claim is wholly without right;" and "7. That the record title to said * * * realty is in the name of the defendant, and was so placed in said defendant by said plaintiff because of his trust and confidence in her; that although the defendant was requested so to do, she refused and refuses to transfer and convey said property or any part thereof * * *"

Being *without jurisdiction* to determine such facts the court's findings numbered 6 and 7, supra, are coram non judice and void.

Whether an action was commenced in the wrong county goes to the jurisdiction of the court to entertain the particular cause of action which question may be raised for the first time on appeal to the supreme court. Good Roads Machinery Co. v. Broadwater County, 94 Mont. 68, 70, 20 Pac. (2d) 834.

*Action to Recover Stocks and Bonds.* Also in the third and fourth paragraphs, supra, plaintiff assumed to unite and commingle a cause to recover specific personal property, to-wit: "certain stocks and bonds" being of the class of actions named in subdivision 3 of section 9130, R. C. M. 1935.

In its decree the trial court assumed to quiet title in the plain-

tiff to certain shares of corporate stocks and ordered defendant "to transfer and convey the same and all thereof to said plaintiff." While the cause is improperly united, yet no actual prejudice results from the order to transfer the certificates for the stocks for at the trial defendant admitted they belonged to plaintiff, and in open court agreed, that when produced, she would endorse and turn them over to him.

*Action on "Bank Account."* Also in the third and fourth paragraphs of his complaint plaintiff attempted to plead a purported cause of action attempting to show a right in him to compel the defendant wife to assign and transfer to him a bank account which plaintiff affirmatively pleads he had "allowed and permitted * * * to be in the name of the defendant" wife, being of the class of actions enumerated in subdivision 3 of section 9130, R. C. M. 1935. The complaint further affirmatively shows that long before this suit was commenced all the credit represented by said bank account had been exhausted and that all the funds had been withdrawn. Thus does the complaint affirmatively show on its face that when this suit was instituted there was no "bank account." The account had long since been closed. The entire credit was gone.

The only specific relief requested by plaintiff with respect to the non-existent "bank account" was that "it be ordered, adjudged and decreed that plaintiff is the owner of the personalty * * * herein described * * * and the defendant be ordered to execute and deliver instruments to plaintiff vesting title thereof in said plaintiff."

Under such facts it would have been but an idle gesture for the trial court to have directed defendant to execute an assignment or transfer of the non-existent "bank account," as was prayed for in the complaint. There remained nothing in the bank that could be transferred.

The complaint makes no demand for a money judgment against the defendant wife in any sum nor does it state facts sufficient to disclose a right in the plaintiff husband to recover a

money judgment from the defendant wife. Notwithstanding, the judgment entered adjudges:

"2. That James Rogers, the plaintiff * * * do have and recover of and from Myrtle A. Rogers, the defendant * * * the sum of two thousand forty and no one hundredths ($2,040.00) dollars with interest at the rate of 6 percent per annum from the date hereof until paid.

From this portion of the judgment the defendant has appealed.

On what possible theory has plaintiff shown a right in himself to recover in his divorce action a money judgment against his wife in the lump sum of $2,040.00 or any other amount?

It is well settled that, in the absence of a statute providing therefor, a husband cannot lawfully be awarded alimony in a suit for divorce. The statutes of Montana do not empower a court to award alimony to a husband either in installments or in gross. Clearly the money judgment against the wife may not be sustained on the theory that it constitutes a lump-sum alimony award to the husband.

The money judgment may not be sustained on the theory of a "property settlement" due the husband on dissolution of the marriage. Community property is unknown to the law of Montana and there is no evidence that the bank account ever stood to the credit or in the name of the husband either individually or otherwise or that the husband at any time ever had authority to write checks or draw on said bank account, same having been at all times in the name of the wife alone. Compare: Stefonick v. Stefonick, 118 Mont. 486, 167 Pac. (2d) 848, 164 A. L. R. 1211; Rufenach v. Rufenach, 120 Mont. 351, 185 Pac. (2d) 293; Emery v. Emery, 122 Mont. 201, 200 Pac. (2d) 251; Shaw v. Shaw, 122 Mont. 593, 208 Pac. (2d) 514.

The money judgment against the wife may not be sustained on the theory that the allegations of plaintiff's complaint show a right in him to recover under a common-law action for money had and received. As stated in Truro v. Passmore, 38 Mont. 544, 549, 100 Pac. 966, 968: "Suffice it to say that there is in this

state no action for money had and received, as such; and there is no common law in any case where the law is declared by the Code. [10703, R. C. M.] The common counts have been superseded by our system of code pleading. *A complaint,* under this latter system, *must contain a statement of the facts constituting the cause of action in ordinary and concise language.* [9129, R. C. M.] If the phraseology of any common count is adequate in the particular case to bring the pleader within the code rule, then his pleading is sufficient; otherwise it is not." (Emphasis supplied.) Also see: Moore Bros. Sheep Co. v. Lehfeldt, 57 Mont. 227, 187 Pac. 910.

In the third paragraph of his complaint the husband alleges that he "acquired and owned as his separate property a bank account in the Metals Bank and Trust Company of Butte, Montana of the value of $2,000.00" but the record fails to show any evidence that the bank account ever stood to the credit or in the name of the husband or that he was ever authorized to check or draw on it.

The husband testified: "I also had *money* amounting to $2,040.00 in the Metals Bank and Trust Company in Butte, Montana. * * * My wife had no interest in any of the property; all the property I owned except two old automobiles, was at the suggestion of my wife placed in her name with the understanding that she would have it in the event of my death, and that she would have no present interest and would upon request return all of it to me. * * * *I understood she was to return the property to me if anything ever happened* or if I should request her, to which she agreed."

The wife testified: "My husband conveyed the property at Five Mile to me. *I did not agree to return it.* I received the money on the sale of this [Five Mile] property and placed this money in Metals Bank and Trust Company of Butte, Montana, *in my own name. There was no understanding between my husband and me that I was to transfer any of the property to him.* I had money when I married Rogers. * * * I was sixteen years old when I married him. * * * My husband bought me several

70

fur coats and diamond rings. * * * The ranch at Silver Star had formerly belonged to my stepmother and the ranch was purchased with the proceeds from the [Five Mile] condemnation proceedings. My husband took charge of the condemnation proceedings. At that time I was attending the University of Montana. * * * I * * * have spent almost all of the $2,040.00 that was in the Metals Bank for my own purposes. * * * Most of the money in the bank was earned or inherited by Mr. Rogers.''

The trial was had at Butte where the bank is located and had the wife not placed this money in the bank and opened the bank account in her own name as she testified it would have been a simple matter to ascertain the true facts by calling upon the bank to produce its books and records showing the transactions. Not having done this or introduced any other evidence disputing or contradicting the wife's testimony that the bank account stood in her ''own name'' such testimony must be given considerable weight, especially in light of the averments of paragraph IV of the complaint wherein the husband alleged that ''having trust and confidence in'' his wife he ''allowed and permitted the record title to said personalty * * * to be in the name of the defendant although *said defendant had and has no interest in or to said property or any part thereof.*'' (Emphasis supplied.) The italicized portion of the averment above quoted is but a bald legal conclusion which raises no issue. Poorman v. Mills, 35 Cal. 118, 95 Am. Dec. 90; Allen Clark Co. v. Francovich, 42 Nev. 321, 176 Pac. 259; Giesy v. Aurora State Bank, 122 Or. 1, 255 Pac. 467, rehearing denied 122 Or. 1, 256 Pac. 763; 4 Bancroft's Code Pleading, sec. 1960, p. 3351; Crenshaw v. Crenshaw, 120 Mont. 100, 182 Pac. (2d) 477, 486. Compare: Moore Bros. Sheep Co. v. Lehfeldt, supra.

The undisputed evidence is: That the husband while owner of the fee, conveyed and transferred to his wife the real estate known as the Five Mile property; that while title was in the wife condemnation proceedings were brought resulting in a sale and transfer of the property for airport purposes; that the money consideration received for such transfer was delivered to the

wife in whose name alone the record title then stood; that the wife deposited this money so received by her from the sale of the property in the bank to her credit and in her name alone; that thereafter a part of the money so deposited to the wife's credit was employed to acquire the ranch in Madison county, Montana, and that the balance remained in the bank to the wife's credit until October 1946 when, upon the withdrawal of the funds, the bank account was closed.

The husband had the right to do with his property as he pleased. He voluntarily transferred and conveyed his Five Mile property to his wife. She accepted the deed of conveyance from him and caused it to be placed of record. Subsequently she conveyed the property, accepted the money paid therefor and deposited it in a bank account standing in her name alone. This she did with full knowledge of her husband, who affirmatively pleaded he "allowed and permitted the record title to" said bank account "to be in the name of the defendant" wife.

"Record title passed by the transfer, and, presumptively, actual title passed." Cook v. Rigney, 113 Mont. 198, 204, 126 Pac. (2d) 325, 328. So it was as to money which the husband voluntarily handed over to his wife without consideration. Such transfer of personal property so voluntarily made without consideration constitutes a gift. Section 6882, R. C. M. 1935. The delivery of the property to the wife under such circumstances passed title to her. The credit at the bank which she acquired with the money there deposited became and was her credit. The placing of "the record title to said personalty" in the wife's name proclaimed to the bank, as well as to the world, that the account and credit so created and standing in the name of the donee wife was her property. She alone had the right thereto. She alone was privileged to draw on the account. This she could do without first obtaining the husband's consent. That a portion of the money with which she acquired the credit came from the sale of property which at one time belonged to the husband or from money which he had earned or inherited and thereafter voluntarily delivered to her without consideration and

as a gift did not impair the wife's title to the credit. Compare: Fender v. Foust, 82 Mont. 73, 87, 88, 265 Pac. 15. Kranjcec v. Belinak, infra.

The legal effect of the transaction of the deposit of the money by the wife and the opening of the bank account in her name alone is that it established the relation of creditor and debtor between the wife and the bank. 5 Michie, Banks and Banking, sec. 79, p. 168; Matthews v. Hanson, 145 Va. 614, 618, 134 S. E. 568; Brown v. Daugherty, C. C., 120 F. 526, 631; First National Bank of Portland v. Connolly, 172 Or. 434, 138 Pac. (2d) 613, 626, 143 Pac. (2d) 243.

The prima facie presumption is that a fund deposited in a bank belongs to the person in whose name it has been deposited and the burden of proof is upon another claiming such fund. 5 Michie, Banks and Banking, sec. 368b, p. 710; Egbert v. Payne, 99 Pa. 239, 244; O'Brien v. Radford, 113 Pa. Super. 88, 91, 171 A. 296; Johnson v. Commercial National Bank, La. App., 175 So. 852; Detroit Savings Bank v. Haines, 128 Mich. 38, 42, 87 N. W. 66; United States Fidelity & Guaranty Co. v. First National Bank of Fort Worth, Tex. Civ. App., 1935, 81 S. W. (2d) 213; First National Bank of Portland v. Connolly, supra.

It is the rule in this jurisdiction that a transfer of title to property from one spouse to the other is presumed to be a gift. Kranjcec v. Belinak, 114 Mont. 26, 34, 132 Pac. (2d) 150; Bingham v. National Bank of Montana, 105 Mont. 159, 166, 72 Pac. (2d) 90, 113 A. L. R. 315; Lewis v. Lewis, 109 Mont. 42, 49, 94 Pac. (2d) 211; Lewis v. Bowman, 113 Mont. 68, 77, 121 Pac. (2d) 162; Humbird v. Arnet, 99 Mont. 499, 509, 44 Pac. (2d) 756. "A gift is a transfer of personal property, made voluntarily, and without consideration." Section 6882, R. C. M. 1935.

The law presumes that an advance of money made by one spouse to the other is a gift, a gratuity; no contractual relationship is presumed and no obligation arises therefrom. The allegation in the complaint that the wife withdrew all the funds from the bank account standing in her name and took or spent same without the consent of her husband does not tend to imply that

the parties intended that any contract liability would arise. Hence the husband may not recover the money advanced by him which he knowingly "allowed and permitted" his wife to deposit in her own name and to her credit alone. See: Bast v. Bast, 68 Mont. 69, 76, 217 Pac. 345; Shaw v. Shaw, supra; Kranjcec v. Belinak, supra.

In Kranjcec v. Belinak, supra, a wife withdrew money from the joint bank account of herself and husband with which she bought certain property and this court, upon the authority of Ludwig v. Montana Bank & Trust Co., 109 Mont. 477, 98 Pac. (2d) 377, 379, and the cases therein cited, there held that the wife "had the right to withdraw it and use it as she might choose." [114 Mont. 26, 132 Pac. (2d) 153.]

While the presumption that the transaction was a gift may be rebutted by competent evidence, this court has held that to overcome such presumption the evidence "must be clear, convincing * * * and practically free from doubt," [113 Mont. 68, 121 Pac. (2d) 167] Lewis v. Bowman, supra; Clary v. Fleming, 60 Mont. 246, 252, 198 Pac. 546, and that such presumption is not over come as a matter of law by the positive testimony of an interested witness to the contrary. McLaughlin v. Corcoran, 104 Mont. 590, 597, 69 Pac. (2d) 597; Lewis v. Bowman, supra.

In Bingham v. National Bank of Montana, supra, this court said [105 Mont. 159, 72 Pac. (2d) 94] : "Where the relationship between the person advancing the money and the person taking the legal title is that of husband and wife, the presumption, rebuttable in character, is that the conveyance is made as a gift. * * *

"It is here urged that section 6785 is all-inclusive, applying to every transaction without regard to existing relationships between the parties, but this court has consistently recognized, in instances of close relationship, that the presumption of a trust, as declared by section 6785, is supplanted by the presumption of a gift. The last decision applying this latter presumption was McLaughlin v. Corcoran, 104 Mont. 590, 69 Pac. (2d) 597. These decisions have all been by a unanimous court, although

decided by an ever-changing personnel of the court. They have been rendered over a period of some sixteen years. Eight times since the first decision declaring the presumption of a gift was rendered has the Legislature met in regular session; yet no successful attempt was made by the Legislature to change the rule as declared by this court in this respect. Hence a majority of this court is unwilling to change this established and well-settled rule of law. * * *

"Since the reason for the adoption of the majority rule does not obtain in this jurisdiction, the rule as heretofore declared by this court is more in keeping with our laws than is the majority rule, and, accordingly, we see no sufficient reason why we should now reverse the former decisions of this court and adopt a contrary view."

Even the dissenting opinion of Justice Angstman in Bingham v. National Bank, supra, concedes that the above is the established rule of law in this jurisdiction, where, as in the cause now before this court, the husband advances the money and title is taken in the name of the wife, asserting: "*The majority have announced the correct rule where the husband advances the money and title is taken in the name of the wife,* but the same rule does not apply where the wife furnishes her separate funds for the purchase of property taken in the name of the husband." 105 Mont. at page 182, 72 Pac. (2d) at page 101, emphasis mine.

Rufenach v. Rufenach, supra, by a unanimous court, applied the rule in actions for divorce in this jurisdiction, which rule denies to the trial court, the power to divest the title of the one spouse to specific real or personal property and to vest such title in the other.

In Stefonick v. Stefonick, supra, the plaintiff wife pleaded and her evidence established that she was [118 Mont. 486, 167 Pac. (2d) 858] "ill in body and mind, * * * unable to do perform any hard work, and is not able to provide for herself the necessaries of life" because the defendant husband had "repeatedly and often threatened, beat, kicked and otherwise maltreated" and mistreated her. Because of the financial circum-

stances of the parties, the wife's ill health and physical condition resulting from the intolerable and brutal treatment so inflicted by the husband, and because of her need, the wife was granted a divorce and awarded a lump sum money judgment. On appeal, a majority of this court, with the writer hereof dissenting, set aside and vacated that portion of the decree awarding the money judgment to the wife and said: "It is well settled that in this jurisdiction alimony is in no way a property settlement, but is the provision made for the support of *the wife*. State ex rel. Tong v. District Court, 109 Mont. 418, 96 Pac. (2d) 918, 921." Emphasis mine.

Although concurring in Rufenach v. Rufenach, supra, and in the majority opinion in the Stefonick case, 118 Mont. 486, 167 Pac. (2d) 848, 164 A. L. R. 1211, supra, in the more recent case of Emery v. Emery, 122 Mont. 201, 200 Pac. (2d) 251, at page 267, Justice Angstman wrote: "I do not agree that the court in a divorce action has no authority to adjust the property rights of the parties. If there be *compelling reason* the award may be a lump sum. Stefonick v. Stefonick, 118 Mont. 486, 167 Pac. (2d) 848, 164 A. L. R. 1211." Emphasis mine. The Stefonick case, supra, so cited, is not authority for a lump sum award for there the court set aside the award and denied the wife's right thereto in the face of most compelling reasons pleaded and admittedly established by abundant evidence.

In the Stefonick case, supra, a majority of this court ordered vacated the money judgment of $27,416.60 against the appellant husband while in the instant case the majority opinion ordered affirmed the money judgment of $2,040.00 against the appellant wife. Surely the same rule of law that protected Peter Stefonick in the former case should afford like protection to Myrtle Rogers in the case now before us.

On December 7, 1932, when the parties intermarried the wife Myrtle was a young girl of the age of sixteen years. Following their marriage in the state of Nevada the couple came to Butte, Montana. Both parties appear to be industrious, thrifty, wholesome persons. The husband, by occupation a miner, worked in

the Butte mines, while Myrtle, his wife, set about completing her education by attending the Butte Business College, the Montana State University, Drake University and other educational institutions where she learned to speak a number of foreign languages and to become a secretary and newspaper reporter. For a time she was employed by the United States government and then by the Belgian embassy at Washington, D. C., where she continued with her education. While no children were born of the marriage, the couple lived together as husband and wife for about fourteen years during which time the husband courted his young wife's favor, generously assisted financially with her education and gave her money, fur coats and jewelry,—all presumed to be gifts which, under the law as applied to the record before us, the donee wife was not thereafter obligated to return or account for to her indulgent mate should she incur his displeasure.

A portion of the testimony is in direct conflict as the wife testified she did not agree to transfer the property to her husband and that there was no understanding between them to such effect, while the husband, an interested witness, gave positive testimony to the contrary. However, the husband's testimony, standing as it does alone, is not sufficient, as a matter of law, to overcome the presumption that the transaction was a gift, McLaughlin v. Corcoran, supra; Lewis v. Bowman, supra, nor can it be said that his testimony is clear, convincing and practically free from doubt as is required under this court's decisions in the cases of Lewis v. Bowman, supra, and Clary v. Fleming, supra.

Foster v. Berrier, 39 Colo. 398, 89 Pac. 787, holds that where a husband furnished the consideration and caused the title to property to be placed in the name of his wife in order that she might have a home "in case anything should happen to him" that no trust resulted but the transaction amounted to a gift. Therein the court said: "In this case the plaintiff's own testimony is that he cause the title to this property to be placed in the name of his wife in order that she might have a home in case

anything should happen to him. In another place in the testimony he says that it was intended as a home for himself and wife. No other conclusion can be drawn from this testimony than that it was not intended by the plaintiff that his wife should hold this property in trust for him, but that she should hold it in her own right, in order that she might have a home in case he should die, or, as he says, in case 'anything should happen' to him. This is not only a valid gift, but such gifts are encouraged by the law, in order to enable a husband to provide for his wife in case misfortune should overtake him. And it has been the policy of the courts to uphold conveyances to the wife by the husband upon grounds of public policy. In the case of Thomas v. Mackey, 3 Colo. 390, it was said: 'A voluntary conveyance from husband to wife is not per se fraudulent. In obedience to the dictates of humanity and the voice of reason, the husband may, and ought, in prosperous times, if it can be done without imperiling his creditors, to put his wife beyond the reach of want, when old age shall overtake her, and when he, perchance, through some misfortune in business may have lost all his property.' * * * This cannot be regarded as creating a trust, and we must hold that when Berrier caused the property to be conveyed to his wife that it was intended by him as a gift to her, and that she had absolute control and dominion over it.''

In 2 Bogert on Trusts and Trustees, sec. 459, pages 1391-1393, it is said: ''The court takes cognizance of the legal and moral duty of a husband to support his wife, of the high degree of love and affection usually running from husband to wife, recognizes that gifts from husbands to wives are well known to be of common occurrence, and also realizes that husbands often give part or all of their property to their wives at the time of, or shortly preceding, death. It is human experience of a well-established character that voluntary transfers from husbands to wives are frequently made, either to provide the wives with the means of subsistence, or out of pure generosity of the husband, or by way of distribution of an estate in anticipation of death. An unexplained direct or indirect transfer may, therefore, be naturally

attributed to a gift motive. The court probably also takes into consideration that the husband is usually better qualified to manage property than the wife, and that there is a consequent unlikelihood of a desire on his part to use his wife as a trustee or manager of his property. In explaining this presumption of gift from husband to wife, some opinions stress the duty to support, others mention the element of love and affection, and still others lay emphasis on the 'advancement' notion. It is believed that the presumption is not based solely on any of these factors, but rests upon them all. Common experience shows that gifts from husband to wife are frequent for a number of different reasons.''

The judgment which is the subject of this appeal is the *money judgment* against the wife and not the decree granting the husband a divorce. Not being here concerned with the sufficiency of the allegations of the complaint to state a cause of action for divorce the question is:

Does the complaint state facts sufficient to show a right in plaintiff husband to recover the *money judgment* that was entered against his wife?

''Whatever may be the nature of the cause of action upon which plaintiff seeks to recover, he must allege in his complaint facts disclosing the presence of all the elements necessary to make it out.'' Chealey v. Purdy, 54 Mont. 489, 491, 171 Pac. 926, 927.

It is elementary that the complaint must support the particular judgment entered, Crenshaw v. Crenshaw, supra, and the question whether it does or not may be raised for the first time on appeal to this court. Territory ex rel. Blake v. Virginia Road Co., 2 Mont. 96, 100, 101; Parker v. Bond, 5 Mont. 1, 12, 13, 1 Pac. 209; Foster v. Wilson, 5 Mont. 53, 57, 2 Pac. 310; Anderson v. Hulme, 5 Mont. 295, 5 Pac. 865; Quirk v. Clark, 7 Mont. 31, 33, 14 Pac. 669; Tracy v. Harmon, 17 Mont. 465, 43 Pac. 500; Van Horn v. Holt, 30 Mont. 69, 71, 75 Pac. 680; Murray v. City of Butte, 35 Mont. 161, 88 Pac. 789; Bado-

vinac v. Northern Pac. R. Co., 39 Mont. 454, 104 Pac. 543; Crenshaw v. Crenshaw, supra.

While certain objections to a complaint are deemed to have been waived if not first taken by motion, demurrer or answer, yet this rule has no application to the objection to the jurisdiction of the court, or to the objection that the complaint does not state facts sufficient to state a cause of action showing plaintiff to be entitled to the particular relief granted in the judgment entered. Section 9136, R. C. M. 1935; Binzel v. Viehmann, 111 Mont. 6, 106 Pac. (2d) 187; Calkins v. Smith, 106 Mont. 453, 78 Pac. (2d) 74.

'' 'Pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them. If a party can allege one cause of action and then recover upon another, his complaint will serve no useful purpose, but rather to ensnare and mislead his adversary.' Southwick v. First Nat. Bank, 84 N. Y. 420; Romeyn v. Sickles, 108 N. Y. 650, 15 N. E. 698; 2 Thompson on Trials, secs. 2251, 2252.'' St. John v. Taintor, 56 Mont. 204, at page 209, 182 Pac. 129, 131.

In order to bring into activity the power of the trial court to hear and determine the right asserted by plaintiff to recover the money judgment entered there must first be a statement in the complaint setting forth the essential ultimate facts constituting the alleged wrong for which redress in money may be had under the law. Reed v. Woodmen of the World, 94 Mont. 374, 381, 22 Pac. (2d) 819, 821.

Plaintiff's pleadings must be so framed as to entitle him to the money judgment given. The only allegations that relate to the "bank account" and upon which plaintiff must rely as tending to support the money judgment entered are those italicized in paragraphs III, IV, and V of the complaint which we have hereinbefore set out verbatim. Clearly such italicized averments are wanting in substance upon the particular issues involved on this appeal and wholly fail to state a cause of action for the recovery of a *money judgment* against appellant wife on any possible

theory. Plaintiff's pleadings and the proof submitted by him both fail to sustain the money judgment. They wholly fail to disclose "facts constituting a wrong for which redress may be had under the law." Reed v. Woodmen of the World, supra. Had plaintiff's pleadings stated a cause of action for damages for the alleged conversion of *his* money or bank account then defendant would have been entitled to a jury trial and she should not have been denied such constitutional right by the simple device of commingling the action for damages in a suit for divorce.

Plaintiff's pleading and proof both establish a gift as defined by statute where complete title in the advancements made to the wife passed to her and the fact that the husband later attempted to construe the gift as an "Indian Gift" by stating that he expected the gift to be returned to him "if anything ever happened" does not entitle him to a *money judgment* for the value of the gift or gifts so made to the wife.

Plaintiff has failed to meet the burden cast upon him. His complaint failed to plead, Schlosser v. Schlosser, 62 Colo. 270, 162 Pac. 153, and his evidence wholly failed to establish his right to the *money judgment* entered.

There being a complete failure of proof to sustain it, that portion of the judgment which awards the husband $2,040.00 and interest should be reversed and the cause should be remanded to the district court with directions: (1) To vacate, set aside and strike from the court's findings of fact numbered 6 and 7 all parts thereof which purport to determine the facts concerning the described real estate situate in Madison county, Montana, or which assume to determine any interest, claim or title therein over which real estate the district court of Silver Bow county had and has no jurisdiction whatever; and (2) to strike and eliminate from the judgment all that portion thereof which provides: "2. That James Rogers, the plaintiff in the above entitled action, do have and recover of and from Myrtle A. Rogers, the defendant in the above entitled action, the sum of Two thousand forty and no one-hundredths ($2,040.00) Dollars

with interest thereon at the rate of 6 percent per annum from the date hereof until paid.''

MR. JUSTICE BOTTOMLY:

I concur in the foregoing dissenting opinion of Mr. Chief Justice Adair.

Rehearing denied October 6, 1949.